UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GIDDIENS,<br>on behalf of himself and all others<br>similarly situated<br><br>            Plaintiff,<br>    vs.<br><br>LEXISNEXIS RISK SOLUTIONS, INC.<br><br>            Defendant. | )<br>)<br>)<br>)<br>)    C.A. No.  12-<br>)<br>)    **CLASS ACTION**<br>)<br>)<br>)    Jury Trial Demanded<br>) |

**CLASS ACTION COMPLAINT**

**I.    PRELIMINARY STATEMENT**

1. This is a consumer class action based upon Defendant's willful violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). Plaintiff brings this action on behalf of employment applicants throughout the country who have been the subject of prejudicial, misleading and inaccurate background reports sold by the Defendant to employers. Defendants has adopted and maintained a policy and practice of failing to timely update such applicants' criminal record histories to eliminate the expunged cases or show that such cases have been expunged, thus not accurately reflecting the final disposition. The prejudice caused by the erroneous reporting is exacerbated by Defendants' failure to notify the consumer contemporaneously of the fact that the erroneous criminal record information is being sent to the employer, and Defendants' failure to maintain strict procedures to assure that expunged records are removed from their reports and that the information is complete and up to date.

Defendant has also pursued and maintained a policy and practice of failing to comply with the FCRA's clear directive to provide consumers with written notice of the results of reinvestigations. The prejudice caused by the lack of notice is that consumers, who are entitled

to receive copies of their credit files from Defendant pursuant to section 1681i of the FCRA, are deprived of full disclosure, and unable to adequately verify and/or dispute the accuracy of the information that Defendant sells to employers.

Defendant's practice harms consumers seeking employment by preventing the consumers from verifying the accuracy of the information that Defendant reports and sells, and harms interstate commerce as a whole.

## II.   JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.   PARTIES

4. Plaintiff Joseph Giddiens is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 5600 Ogontz Avenue, Philadelphia, Pennsylvania 19141.

5. Defendant LexisNexis Risk Solutions, Inc. ("Lexis") is a business entity that provides background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant Lexis regularly conducts business in the Commonwealth of Pennsylvania, and operates a principal place of business at 1000 Alderman Drive, Alpharetta, GA 30005-4101.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendant's Practices As A Consumer Reporting Agency And Furnisher Of Consumer Reports For Employment Purposes

6. At all times pertinent hereto, Defendant Lexis was a consumer reporting agency ("CRA") as defined by section 1681a(f) of the FCRA.

7. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information.

8. Defendant obtains distilled and incomplete public record information, including criminal record history, from third party databases and courthouses and maintains such data in consumer files that it creates and assembles.

9. Defendant sells such consumer files to potential employers wishing to investigate the background of various job applicants.

10. As a CRA, Defendant is also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

11. Defendant does not, however, maintain strict procedures designed to insure that such information is complete and up to date, nor does it utilize reasonable procedures designed to assure maximum possible accuracy. Based upon a common policy and practice, Defendant regularly and illegally reports criminal records that have been expunged by court order. In some situations, the report of an expunged case deprives the individual of a report that he has no criminal record.

12. When a consumer disputes the accuracy of any item of information contained in the consumer's file at the CRA, the CRA is required, free of charge, to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. 15 U.S.C. § 1681i(a)(1).

13. A CRA is required to provide written notice to the consumer of the results of a reinvestigation not later than 5 business days after the completion of the reinvestigation. 15 U.S.C. § 1681i(a)(6).

14. As part of, or in addition to, such notice, a CRA is required to provide to the consumer in writing, among other things, the following information: a consumer report that is based on the consumer's file as that file is revised as a result of the reinvestigation; a notice that

3

the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and, a notice that the consumer has the right to request that the consumer reporting agency furnish notification that the item has been deleted to any person designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information.  15 U.S.C. § 1681i(a)(6)(B).

15.     Despite these clear and unambiguous requirements of the FCRA, Defendant does not provide consumers with such information following a reinvestigation.

16.     Defendant's practices not only violate the FCRA as a matter of law, the practices exact serious consequences on consumer job applicants and interstate commerce.  Consumers who have attempted to obtain the deletion of negative background history are prejudiced in their ability to adequately determine whether the information is being accurately reported.

17.     Despite its duties to maintain strict procedures to assure that criminal record information is complete and up to date, to utilize procedures designed to assure maximum possible accuracy of the criminal record information that it sells to prospective employers, and to notify consumers of the results of a reinvestigation in accordance with section 1681i(6), Defendant has nonetheless deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards these duties, in violation of the FCRA.

  **B.**  **The Experience Of The Representative Plaintiff**

18.     In April 2008, Mr. Giddiens was arrested and charged with possession of a controlled substance.  He pled *nolo contendere* and received probation without verdict, which he successfully completed.

19.     By Order of the Court of Common Pleas, Philadelphia County, dated April 12, 2010, the charges and the arrest record were ordered expunged (the "Expungement Order").

Certified copies of the Expungement Order were served on the Philadelphia Police Department; the Pennsylvania State Police ("PSP"); the Administrative Office of Pennsylvania Courts ("AOPC") Expungement Unit; and, the First Judicial District of Pennsylvania, Data Processing Unit.

20. The Expungement Order required the arresting agency to destroy or deliver to Mr. Giddiens or his representative all criminal records, fingerprints, photographic plates and photographs pertaining to the charges which resulted from the arrest, and also ordered the PSP to request the Federal Bureau of Investigation to return to them all records pertaining to the arrest, which were ordered to be destroyed upon receipt.

21. The April 2008 arrest of Mr. Giddiens was removed from the AOPC database within days of the expungement order.

22. On May 5, 2010, the PSP certified that all criminal record history pertaining to the April 2008 arrest of Mr. Giddiens was expunged from their files.

23. Since the implementation of the expungement, Mr. Giddiens has had a clear criminal record.

24. In December 2011, Mr. Giddiens applied, through a placement company named Infinity Staffing ("Infinity") located in Woodbury Heights, New Jersey, for a position with the United Parcel Service ("UPS").

25. Infinity immediately accepted Mr. Giddiens' application for employment and he was scheduled to begin work at UPS the next day.

26. However, on the following day, after receiving a background report from Defendant, Infinity called Mr. Giddiens and informed him that he would not be hired for the UPS job due to the results of a criminal record background check.

27. The background check was performed by Lexis and sold to Infinity.

28. The background check stated that despite the search being conducted on December 12, 2011, it was "Current as of … 06/30/2011." It also improperly and inaccurately reported the April 2008 arrest that had been expunged in April 2010.

29. The public sources of information in Pennsylvania from which CRAs such as Lexis can obtain information used for criminal background checks are court records maintained by AOPC and law enforcement records maintained by the central repository of the PSP.

30. In Pennsylvania, criminal court records are made publicly available at no cost and with no restrictions in a database maintained by AOPC and available on its website. These records can be accessed by anyone within seconds from the AOPC website.

27. By contrast, a request for information from the PSP database costs $10.00. Moreover, if the person's record shows arrests or convictions, there will not be a response for at least two to three weeks, and often longer. For these reasons, CRAs seldom order or wait for PSP records before generating a background check, unless the job for which a person is being screened requires a PSP record check as a matter of law.

28. AOPC also provides for bulk purchases of its criminal record information. CRAs as a matter of general practice use the AOPC database as their public source of criminal history data in Pennsylvania.

29. As a general practice, expunged criminal charges in Philadelphia are hidden from public view in AOPC's database within days of an expungement order. They are completely eliminated from the database that is provided to bulk purchasers shortly thereafter.

30. Upon information and belief, Mr. Giddiens' expunged charges were removed from public view in AOPC's database within days of the April 12, 2010 Expungement Order. They were removed entirely from the database shortly thereafter.

31. As of the removal from public view of the expunged charges from AOPC's database, any preparer of a background check that maintained strict procedures designed to insure complete and up to date information would have been aware that it was no longer appropriate to report the expunged charges.

32. Even if a preparer were to rely instead on bulk data obtained from AOPC, the preparer would know that expunged charges had been eliminated if it properly updated its database.

33. Defendant reported the expunged charges on Mr. Giddiens' background check report more than a year and a half after they had been hidden from public view and then eliminated from AOPC's database.

34. Defendant failed to search for updated public record information on Mr. Giddiens' expunged criminal charges, because the only source of information that it could have obtained in the time frame in which it produced and sold the report to Infinity was the AOPC database, from which the charges had long been hidden from public view and removed by the time that the report was compiled.

35. In preparing a report on Mr. Giddiens in December 2011, Defendant did not search any public records in which Mr. Giddiens' charges had not yet been expunged. Mr. Giddiens' charges had been eliminated from all public records by that time.

36. Defendant's background report prepared in December 2011 lists the source of the expunged case as "Court of Common Pleas" even though the case had been eliminated from AOPC's database before the report was compiled because of the Expungement Order.

37. Despite providing its background check to Infinity on or about December 12, 2011, Defendant did not provide notification of such fact to Mr. Giddiens, or a copy of the report itself, at the time it furnished the information. Mr. Giddiens did not receive a copy of the

7

background report based upon which he had been rejected for employment until he requested it several weeks after his rejection.

38.     After retaining counsel, Mr. Giddiens disputed the accuracy of the background report to Defendant.

39.     After receiving his dispute Defendant allegedly performed a reinvestigation of the information he disputed, and reported on the results of the reinvestigation in a letter dated February 20, 2012.

40.     The letter violated the requirements of section 1681i(a)(6) in a number of ways, including the following: the letter did not include a consumer report that is based on the consumer's file as that file is revised as a result of the reinvestigation; the letter did not include a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer; the letter did not include a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and, the letter did not include a notice that the consumer has the right to request that the consumer reporting agency furnish notification that the item has been deleted to any person designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information.  A copy of the letter is attached hereto as Exhibit A.

41.     Defendant's practices and procedures described herein affected not only the Plaintiff but also other consumers who had disputed the completeness or accuracy of information being reported about them.

42. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

43. At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein. Defendant knowingly carries out a business practice of reporting criminal record information that is not current or up to date, and without assuring that such information has not been expunged and/or had its status changed. There is no reading or interpretation of section 1681e(b) of the FCRA, or any provision for that matter, which would justify, sanction, excuse or condone such a practice.

## V.   CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action individually and as a class action for Defendant's violations of sections 1681i(a)(6) and 1681e(b) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

(a) All natural persons residing in the United States who within two (2) years prior to the filing of the Complaint were the subject of a reinvestigation of the completeness or accuracy of any item of information contained in the consumer's file that was disputed by the consumer and were sent a letter by Defendant substantially in the form of the letter attached hereto as Exhibit A; and,

(b) All natural persons residing in the United States who, within two (2) years prior to the filing of the Complaint, were the subjects of background reports in which expunged criminal charges were reported by Defendant.

45. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon

information and belief that the Class numbers in the thousands. Defendant sells criminal history record information to thousands of businesses throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Further, Defendant receives numerous disputes concerning completeness and accuracy from consumers, and is obligated to conduct reinvestigations accordingly. The notices of reinvestigation required under section 1681i(a)(6) and sent by Defendant to consumers are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports.

46. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions include (a) whether Defendant, by employing a policy and practice of disclosing expunged criminal record histories, willfully and negligently violated section 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates; and (b) whether the Defendant willfully and negligently violated section 1681i(a)(6) of the FCRA by sending notices of the results of reinvestigation that do not comply with the requirements of the FCRA.

47. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

48. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

49. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or

varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

50. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small as the maximum statutory damages are limited to $1,000.00 under the FCRA.  Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

## VI.     CAUSES OF ACTION

### COUNT ONE – FCRA § 1681e(b)

51. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

52. Pursuant to sections 1681n and 1681o, Defendant is liable for negligently and willfully violating the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b).

### COUNT TWO – FCRA § 1681i

53. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

54.     Pursuant to section 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully violating the FCRA by sending notices of the results of reinvestigations that do not comply with the requirements of section 1681i(a)(6)(B).

### COUNT THREE-FCRA §1681k

55.     Pursuant to section 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully violating section 1681k of the FCRA by failing to notify Plaintiff of the fact that it furnished public record information about him to Infinity, along with Infinity's name and address, at the time it furnished such information.

### VII.    JURY TRIAL DEMAND

56.     Plaintiff demands trial by jury on all issues so triable.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks relief against the Defendant as follows:

(a)     That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

(b)     That judgment be entered against Defendant for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

(c)     That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(d)     That judgment be entered in favor of Plaintiff for actual damages;

(e)     That the Court award costs and reasonable attorney's fees; and

(f) That the Court grant such other and further relief as may be just and proper.

Dated: May 14, 2012                                    Respectfully submitted,

                                      **FRANCIS & MAILMAN, P.C.**

By:   *s/ James A. Francis*
       James A. Francis
       David A. Searles
       Erin A. Novak
       Land Title Building, 19th Floor
       100 South Broad Street
       Philadelphia, PA 19110
       (215) 735-8600

**COMMUNITY LEGAL SERVICES, INC.**
Sharon M. Dietrich
Brendan Lynch
1424 Chestnut Street
Philadelphia, PA  19102
215-981-3700

Attorneys for Plaintiff and the Class