UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GIDDIENS,<br>on behalf of himself and all others<br>similarly situated<br><br>Plaintiff,<br>v.<br><br>FIRST ADVANTAGE LNS SCREENING<br>SOLUTIONS, INC. F/KA LEXISNEXIS<br>SCREENING SOLUTIONS, INC.<br><br>Defendant. | CLASS ACTION<br><br>C.A. No. 12-2624 |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL AND NOTICE TO CLASS

Plaintiff John Giddiens moves for preliminary approval of the parties' Settlement Agreement in this class action brought under the Fair Credit Reporting Act (FCRA), under Fed. R. Civ. P. 23 of the Federal Rules of Civil Procedure and Local Civil Rule 23.1, and to approve the attached proposed notice to the classes. The parties anticipate the proposed notice, if approved, will be mailed to approximately 289 class members nationwide.

With the Settlement Agreement[1] (which is attached as Appendix I hereto), Plaintiff also submits the proposed Final Approval Order (Exhibit A to the Settlement Agreement), a proposed Preliminary Approval Order (Exhibit B to Settlement Agreement), a proposed Mail Notice to the Class (Exhibit C to Settlement Agreement), and a proposed Claim Form (Exhibit D to Settlement Agreement).

---

[1] Unless otherwise defined herein, all capitalized terms in this Memorandum have the same meaning as in the Settlement Agreement.

The terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy. Class Counsel are experienced consumer class action attorneys who are qualified to evaluate the proposed Settlement Agreement on behalf of the class.

As set forth in more detail below, the outcome of this case represents an unqualified success for the Plaintiff and Settlement Class, and the settlement achieved readily meets the criteria for preliminary approval for several reasons. First, directly as a result of the lawsuit, Defendant has corrected the conduct that gave rise to the underlying action, namely it has identified the file containing expungement data in Pennsylvania and incorporated a practice of reflecting that data in its database. Second, Plaintiff has secured significant monetary compensation for Class members. The settlement provides that Defendant will provide guaranteed payments of $1,000 to Class members, representing 100% of the statutory damages to which they would be entitled if Plaintiff were entirely successful at trial, without proof of any actual injury. In addition, for Class members who believe that they suffered actual damages in the form of wage loss in an amount greater than $1,000, Defendant has agreed to pay up to $995,000 to satisfy such claims through an expedited and non-onerous process.

Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement. It was only reached after over two years of litigation and a detailed mediation under the auspices of Hon. Judge Joel B. Rosen (Ret.). It is indisputable that negotiations were conducted in an arms-length manner.

For these reasons, this Court should approve the settlement reached here.

**I.     NATURE OF THE LITIGATION**

This is a consumer class action brought under the Fair Credit Reporting Act against Defendant LexisNexis Risk Solutions, Inc. (LNSSI), a national consumer reporting agency

(CRA).  The Complaint's primary allegation is that Defendant willfully violated section 1681e(b) of the FCRA through its practice of reporting expunged criminal records on consumer reports to employers.  The criminal records that Defendant reported about Plaintiff Giddiens and the Class to their employers were Pennsylvania records that had been expunged by court order, and which originated from the Administrative Office of Pennsylvania Courts (AOPC).  The AOPC provides updates to previously reported court records through what it terms the "Lifecyle" file.  As a result of the filing of this case, Defendant identified the LifeCycle file and eliminated any Lifecycle expungement records from its database and reports.

### A. Procedural History

Mr. Giddiens filed this action in the United States District Court for the Eastern District of Pennsylvania, captioned *Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624,[2] on May 14, 2012.  (Doc. 1).   Defendant LNSSI filed its Answer on July 30, 2012 (Doc. 10).

### B. Written Discovery and Depositions

The parties embarked upon discovery, including the exchange of interrogatories and responses, and the production of thousands of pages of documents.  Plaintiff's counsel conducted seven depositions of LNSSI representatives on a variety of pertinent topics.  The Defendant took Plaintiff's deposition on January 7, 2014.  The parties also engaged in significant third-party discovery, including three depositions of third parties.  In addition, both sides proffered expert opinions and expert witness discovery was conducted, including Defendant's taking the deposition of Plaintiff's expert.

---

[2]   As described in Plaintiff's Motion to Amend the Caption, filed today (Doc. 37), Plaintiff subsequently learned that the employment background screening business conducted under the LexisNexis name was acquired by First Advantage Corp. and now operated under the name "First Advantage LNS Screening Solutions, Inc."

C.     **Settlement Negotiations and Mediation**

On March 26, 2013, the parties agreed to stay all deadlines in the case to pursue private mediation.  On August 7, 2013, the Parties conducted an arms-length, contentious, lengthy, and complicated in-person mediation session with the Honorable Judge Joel B. Rosen (Ret.).  The parties were unable to reach an agreement during this mediation session, and the Court issued a further scheduling order for the case on August 29, 2013 (Doc. 28).

After pursuing additional discovery, the parties conducted additional productive good-faith settlement discussions in January and February 2014, and agreed to modify the existing scheduling order to continue these discussions (Docs. 32, 33).  In May 2014, the parties were able to arrive at a proposed settlement which they believe is fair, reasonable and adequate -- and which avoids the ongoing expense and uncertainties of further litigation, trial and possible appeal.  *See* Settlement Agreement attached as Appendix I.  It took the parties an additional month to negotiate the terms of the proposed notice to the class and preliminary and final proposed orders, and to reduce all of the terms of the settlement to writing.

II.    **NATURE OF SETTLEMENT**

Representative Plaintiff Giddiens and Defendant LNSSI have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis.  The terms of the settlement are set out in the Settlement Agreement attached hereto as Appendix I.  The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the economic, as well as non-economic, value of the settlement to the class.

A.     **The Settlement Class.**

The class of consumers covered by the settlement is defined as follows:

All persons residing in the United States of America (including its territories and Puerto Rico) (a) who were the subject of a LexisNexis employment background

screening report that was furnished for an employment purpose within two years preceding the filing of this Action and during its pendency (b) that contained at least one record of criminal history that had been expunged or sealed prior to the date of the employment background screening report, as a result of data from the LifeCycle File developed by the Administrative Office of Pennsylvania Courts not being taken into account in connection with the preparation of the employment background screening report so provided.

App. I, subection 3.1.1.

### B.     Settlement Benefits.

#### 1.     Monetary Compensation

The Settlement Agreement provides for each class member who takes no action upon receiving the notice of the Settlement to receive a cash payment in the amount of $1,000. App. I, subsection 5.1.1. No claim need be filed by any class member in order to receive this payment.

Alternatively, Settlement Class Members who do not opt out of the Settlement Class, and who believe they suffered damages greater than $1,000 may choose to file a Damages Claim by submitting a Claim Form. App. I, Section 5.2. LNSSI will make $995,000 available for payment of Damages Claims, which will be limited to lost wages. App. I, subsections 5.2.8, 1.22. LNSSI will review each Damages Claim and either accept it or refer it to binding arbitration. App. I, subsection 5.2.7(a). Settlement Class Members making Damages Claims will receive no less than $500, even if awarded less by the arbitrator. App. I, subsection 5.2.7(c). Additionally, Settlement Class Members will be informed of the identity of the employer to whom LNSSI sent a background report, and that Class Counsel, Community Legal Services, Inc. may represent them in the claims process. App. I, subsection 5.2.1.

To the extent that any funds remain in after funding the automatic payments and payments for Damages Claims to Settlement Class Members, such funds will be distributed to

two *cy pres* recipients designated by the parties and approved by the Court.  App. I, subsection 5.7.

Accordingly, the instant settlement is qualified for preliminary approval since it confers a substantial benefit to the Class members.

### 2. Costs of Notice.

Defendant will pay all costs of notice relating to the settlement and all necessary and reasonable costs of administering the disbursement of consideration, and other administrative expenses including, but not limited to, postage charges, printing costs, a telephone assistance program, and all other notice costs and other charges as may be approved by the parties subject to further approval by the Court.  App. I, subsection 3.3.6.

### 3. Service Award for Class Representative

Subject to court approval, the parties have agreed that the representative Plaintiff will be paid an award of $10,000 by the Defendant, and to which the Defendant will not object, for his individual settlement award and his services in connection with representing the Class.  App. I, Art. 5.3.1.

### 4. Attorney's Fees and Costs.

Subject to court approval, LNSSI has agreed to pay, and agrees not to object or engender objection to, $520,000 for the combined attorney's fees and costs incurred by Class Counsel in the prosecution of the litigation.  App. I, subsection 5.32.  The amount of attorney's fees and expenses to be paid to Class Counsel was not agreed to by the parties until agreement was reached in principle on the other terms of this Settlement Agreement.  Plaintiff will submit a fee petition ten (10) days prior to the Final Fairness Hearing, which will include Plaintiff's detailed request for attorney's fees and costs.

**5.     Class Notice**.

The settlement provides for a mutually agreed upon Settlement Administrator, McGladrey, LLP, to effectuate the compiling and mailing of the class notice. App. I, subsection 3.3.1. This entails the compiling of a list of all Settlement Class Members, which LNSSI will compile from its records and supply to the Settlement Administrator within ten business days following the entry of Preliminary Approval. App. I, subsection 3.3.2. LNSSI or the Settlement Administrator shall take all reasonable and customary steps to update the consumer lists to verify to the extent possible the current address of persons identified on the consumer lists prior to sending the initial notice as set forth in the Settlement Agreement. *Id.*

Within 30 days following Preliminary Approval, the Settlement Administrator shall send Settlement Class Notice by first-class U.S. mail, postage prepaid, to each member of the Settlement Class identified on the class list. App. I, Ex. C. The Notice will contain the following categories information: (i) the nature of the action; (ii) the definition of the respective class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Notice will also contain information about the Settlement Website (described in subsection 3.3.4 of the Settlement Agreement). For any Settlement Class Notice returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall re-mail the Notice to the provided forwarding address.

Not later than 15 days before the Final Fairness Hearing, the Settlement Administrator shall file proof of the mailing of the Settlement Class Notices with the Court. App. I, subsection 3.3.4.

## III. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The Parties have reached a proposed agreement on behalf of the Settlement Class defined above. In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, the Class Representative would show the following.

### A. The Proposed Settlement Class Meet Rule 23(a)'s Requirements

#### 1. Numerosity

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members meets numerosity

requirement); *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) (92 class members meets the numerosity requirement).

Here, the Parties have determined through discovery that the Settlement Class consists of approximately 289 Pennsylvania consumers. This size of a class is certainly sufficient to establish that joinder is impracticable.

### 2. **Commonality**

A putative class satisfies Rule 23(a)'s commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). As this Circuit reiterated recently, "that bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, *id.,* when plaintiffs did not bring identical claims, …, and, most dramatically, when some plaintiffs' claims may not have been legally viable, …. In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), and concluding that while "*Dukes* is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2)).

The primary question, which focuses on the uniform conduct and procedures of the Defendant, are common to the Class: whether Defendant, by employing a policy and practice of disclosing expunged Pennsylvania criminal record histories, willfully and negligently violated section 1681e(b) of the FCRA by failing to follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates.

The theory of liability is precise because it arises from the same standard practice and present basic questions that are common to all Class members. Cases presenting standardized practices directed at consumers invariably present common predominating issues. *See Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.'" (citing cases). *See also Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from statements contained in standard collection communications particularly appropriate for class action).

Inasmuch as the Defendant's policies and practices with respect to such conduct were essentially uniform with regard to these issues, commonality is satisfied. *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d 283, 310 (3d Cir. 1998).

### 3.     **Typicality**

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311. The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims she can reasonably be expected to advance the interests of absent class members. *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982).

The Class Representative is a member of the Settlement Class, have the same interest in

resolution of the issues as all other members of the Class and his claims are typical of all members of the Class.  Plaintiff was affected by the Defendant's practices in the same manner as all members of the Class.  These facts, and Plaintiffs' claims, are therefore typical of the facts and claims of all other members of the proposed Settlement Class.  *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998).

### 4. **Adequacy of Representation**

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class.  *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiff here fairly and adequately represents the interests of the Classes.  Mr. Giddiens has retained qualified and experienced attorneys who have substantial experience in class action and consumer litigation and are qualified to conduct the litigation. The firm of Francis & Mailman, P.C. has been certified to represent classes under the FCRA, as well as other consumer protection laws, by this Court and by courts in other districts, and has tried class actions to verdict as well.  *See White v. Experian Information Solutions,* 2014 WL 304270, *16 (C.D. Cal. Jan. 21, 2014) (appointing Francis & Mailman as interim class counsel in contested proceeding); *Sapp v. Experian Information Solutions*, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.,* 285 F.R.D. 139 (D. Me. 2012) (certifying firm of Francis & Mailman as class counsel in consumer class action); *accord*, *Serrano v. Sterling Testing Systems, Inc.,* 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010); *Summerfield v. Equifax Information Services, LCC*, 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Information Services, LLC*, 256

F.R.D. 492 (E.D. Pa. 2009); *Jones v. Midland Funding, LLC,* C.A. No. 3:08cv802 (RNC) (D. Conn. October 13, 2009); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *3 (E.D. Pa. 2003).

Moreover, Plaintiff has no interests that are antagonistic to the interests of the Class, and is unaware of any actual or apparent conflicts of interest between him and the Class.

### B.     The Proposed Settlement Classes Meet Rule 23(b)'s Requirements

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).  The proposed Settlement Class meets these requirements.

#### 1.     Common Questions of Law and Fact Predominate Over Individual Ones

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.  Plaintiff alleges on behalf of the Settlement Class that Defendant failed to comply with section 1681e(b) of the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates and thereby reported expunged criminal records to prospective employers.  The internal policies and procedures that Defendant followed in improperly disclosing the expunged records – factual issues central to Plaintiff's claims – are generally common to all members of the Settlement Class.

In addition, Plaintiff alleges on behalf of this Class that Defendant's alleged failure to comply with section 1681e(b) was "willful," *i.e.*, that there is no objectively reasonable

interpretation of the FCRA, as a matter of law, that would support Defendant's view that it was permissible to report expunged criminal records. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69 (2007). This is a predominating legal question common to all Settlement Class members.

### 2. A Class Action is the Superior Method for Resolving the Class Members' Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is a strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006). Even if just a small fraction of the Settlement Class were to bring individual suits, the resolution of common issues in a single proceeding here would be infinitely more efficient than the separate adjudication of individual claims in separate lawsuits across the country.

## IV. ARGUMENT

### A. Standards for Preliminary Approval Of A Class Settlement

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002). Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval or final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), *available at* http://www.fjc.gov ("MANUAL"). While a settlement class must satisfy each of the requirements of Rule 23(a) and

Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283, 308-09 (3d Cir. 1998)).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. MANUAL at § 21.62. As this Court has had occasion to rule:

> Such a preliminary determination requires the Court to consider the following factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 11–91 (3d ed. 1992)); *see also In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 254 (D. Del. 2002). If a court concludes, after consideration of those factors, that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Gen. Motors Corp.,* 55 F.3d at 785.

*In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003).

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re: General Motors Truck Litigation*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See In re Linerboard Antitrust Litigation*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa., 2003) (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a

comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*, 521 F.2d 153). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186; *Fisher Bros. v. Cambridge-Lee Indus, Inc.*, 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arms length negotiations." *Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Id.* A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also General Motors*, 55 F.3d at 785-86. Here, the proposed settlement meets these standards.

### B. The Terms of the Proposed Settlement are Fair, Reasonable and Adequate

The proposed settlement is reasonable when considered in light of disputed liability and the statutory cap on damages. These factors demonstrate that the proposed settlement is an excellent result for the Settlement Class. Actual damages available to a consumer may vary and may defeat class certification. Statutory damages for a willful violation of the FCRA are capped at $1,000 per consumer. 15 U.S.C. § 1681n(a)(1)(A). A consumer may only receive such an award if she proves that a defendant consumer reporting agency willfully (as opposed to negligently) violated the FCRA. Even if the Representative Plaintiff won his FCRA claims at trial, there is no assurance that the jury would find willfulness, or award an amount to the Class

15

commensurate with the value ensured by this settlement which guarantees an automatic full $1,000 in statutory damages to Settlement Class members, and provides a claims process for members who believe their damages exceeded that amount, with access to a total of $995,000 provided by Defendant to pay such claims.

The amount awarded by a jury or court is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute; nature of the noncompliance; and, extent to which noncompliance was willful or negligent.  15 U.S.C. § 1681n(a) and § 1681o(a).  Thus, this settlement avoids the litigation risk to the class and secures tangible and useful relief that may not be obtainable after trial.

The adequacy of the proposed settlement is still more clearly appreciated when considered in light of Defendant's liability defenses and the possibility of Representative Plaintiff being unable to prove liability.  Because the Class claims here seek statutory rather than actual damages, the Class must show that Defendant willfully violated the FCRA.  Defendant has asserted that its actions were not willful under FCRA standards because, in part, the oversight that led to any errors was inadvertent.  The parties obviously have different views on these factual issues.  However, winning his case before a jury is by no means certain and Plaintiff has decided that such a risk is unwise in the face of the proposed settlement.

The proposed settlement is the product of serious, informed and non-collusive negotiations.  Defendant has continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this action.  Nonetheless, Defendant has concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the Settlement

Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

The Representative Plaintiff and his counsel recognize the expense and length of a trial in this action against Defendant through possible appeals, which could take several years. They have also taken into account the time already invested in this case, the uncertain outcome and risk of litigation. Representative Plaintiff and his counsel believe that the settlement set forth in the Settlement Agreement confers substantial benefits upon the settlement classes. Through the course of this litigation, Class Counsel had the benefit of extensive written discovery and depositions. Based upon their evaluation of these documents and testimony, Representative Plaintiff and his counsel have determined that the settlement is in the best interest of the settlement classes.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval. The significant automatic payments to Settlement Class members, combined with the option to pursue additional actual damages, provide valuable benefits. Clearly, the goal of this litigation, to seek redress for the class, has been met.

As noted, settlements of class action disputes are favored in the law, to bring finality and to conserve judicial resources. *General Motors*, 55 F.3d at 783. Settlement of consumer class actions otherwise involving individual claims for small sums, such as the instant action under the FCRA, are particularly well suited to class settlement.

The settlement does not improperly grant preferential treatment to the Representative Plaintiff or segments of the Class. The relief provided in the settlement will benefit all members of the Class equally. The amount payable to the Representative Plaintiff is reasonable in that he

has participated in the litigation of this action, rendered substantial services on behalf of absent class members.

At the Final Fairness Hearing, movant anticipates a final judgment giving effect to the Settlement Agreement and dismissing without prejudice all claims of any purported settlement class members who have not been excluded from the settlement classes as set forth above. Upon confirmation of the settlement at the Final Fairness Hearing and performance by Defendant of all of its obligations under the Settlement Agreement, Defendant will be fully, finally and completely released of all liability for the claims asserted in the litigation and as further described in the Settlement Agreement.

## V.   CONCLUSION

Accordingly, Plaintiff John Giddiens requests that this Court grant preliminary approval of the Settlement Agreement, as set forth in the proposed Order of Preliminary Approval.

Defendant does not contest the requested relief.

Dated: July 9, 2014

Respectfully submitted,
**FRANCIS & MAILMAN, P.C.**

By: _/s/ James A. Francis_
JAMES A. FRANCIS
David A. Searles
John Soumilas
Lauren KW Brennan
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**COMMUNITY LEGAL SERVICES, INC.**
Sharon M. Dietrich
Brendan Patrick Lynch
1424 Chestnut Street
Philadelphia, PA 19102
(215) 496-7060
*Attorneys for Plaintiff and the Class*