## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GIDDIENS, on behalf of himself and all others similarly situated, | : : : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | No. 12-2624 |
| | : : | |
| FIRST ADVANTAGE LNS SCREENING SOLUTIONS, INC., F/K.A LEXISNEXIS SCREENING SOLUTIONS, INC. | : : : | |
| | : : | |
| Defendant. | : | |
| | : | |

## <u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

For the reasons set forth in the accompanying Memorandum of Law, John Giddiens hereby seeks final approval of the class action settlement preliminarily approved by this Court by Order dated July 18, 2014 (Doc. 40).

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:  November 21, 2014        BY:    <u>*/s/  James A. Francis*</u>
JAMES A. FRANCIS
JOHN SOUMILAS
DAVID A. SEARLES
LAUREN KW BRENNAN
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Sharon M. Dietrich
Brendan Patrick Lynch
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut St.
Philadelphia, PA 19102

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN GIDDIENS, on behalf of himself and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | No. 12-2624 |
| | : | |
| | : | |
| FIRST ADVANTAGE LNS SCREENING SOLUTIONS, INC., F/K.A LEXISNEXIS SCREENING SOLUTIONS, INC. | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................................1

II.  NATURE AND HISTORY OF THE LITIGATION..............................................2

    A.  Procedural History ........................................................................................3

    B.  Written Discovery and Depositions ...........................................................3

    C.  Settlement Negotiations and Mediation ....................................................4

III.  SUMMARY OF THE SETTLEMENT ...................................................................4

    A.  The Settlement Class......................................................................................5

    B.  Settlement Benefits .......................................................................................5

        1.  Monetary Compensation ..................................................................5
        2.  Costs of Notice ...................................................................................6
        3.  Service Award for Class Representative........................................6
        4.  Attorneys' Fees and Costs ...............................................................6
        5.  Class Notice .......................................................................................7

IV.  ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ............8

    A.  Numerosity......................................................................................................8

    B.  Commonality...................................................................................................9

    C.  Typicality .........................................................................................................9

    D.  Adequacy of Representation ......................................................................10

    E.  Rule 23(b)(3) Considerations......................................................................11

V.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE
    AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ......................13

    A.  The Complexity, Expense And Likely Duration Of The Litigation .........................15

    B.  The Reaction Of The Class To The Settlement .......................................15

    C.  The Stage Of The Proceedings And The Amount Of Discovery Completed ...........16

    D.  The Risks Of Establishing Liability............................................................17

E.   The Risks Of Establishing Damages........................................................17

F.   The Risks Of Maintaining The Class Action Through Trial ...................................18

G.   The Ability Of The Defendant To Withstand A Greater Judgment.........................19

H.   The Reasonableness Of The Settlement In Light of
     The Best Possible Recovery.........................................................................19

I.   The Range Of Reasonableness Of The Settlement To A Possible
     Recovery In Light Of All The Attendant Risks Of Litigation .................................21

VI.   INDIVIDUAL SETTLEMENT AND SERVICE AWARD..............................................21

VII.   CONCLUSION.......................................................................................22

## I.     __INTRODUCTION__

Plaintiff John Giddiens ("Representative Plaintiff"), by the undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Final Approval of the proposed settlement of his claims brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA") against Defendant First Advantage LNS Screening Solutions, Inc., f/k/a LexisNexis Screening Solutions, Inc. ("LNSSI"), a national consumer reporting agency ("CRA").  The terms of the settlement are set forth in the Settlement Agreement submitted on July 9, 2014 (Doc. 38-2).[1]  As discussed herein, the proposed settlement provides comprehensive equitable and compensatory relief for the Settlement Class and meets all of the standards for settlement approval under Rule 23(e).  It should, therefore, be granted final approval as fair, reasonable and adequate as to all Class members.

The settlement represents an excellent resolution for numerous reasons.  First, in a consumer class action brought under the FCRA, which is remedial in nature, the settlement assures practice changes by Defendant LNSSI that will benefit consumers in the future.  Directly as a result of the lawsuit, Defendant has corrected the conduct that gave rise to the underlying action; namely, it has identified the file containing expungement data in Pennsylvania and incorporated a practice of reflecting that data in its database.[2]  Second, the settlement provides material benefits to the Settlement Class

---

[1]     Plaintiff has simultaneously moved for an award of attorney's fees and costs pursuant to the Settlement Agreement.

[2]     *See* Exhibit A, select portions of the transcript of the deposition of Defendant's corporate representative Charles Oyler; Exhibit B, Defendant's Supplemental Interrogatory Response No. 8, filed under seal.

members through the payment of guaranteed compensatory damages, automatic payments of $1,000 to Class members, without the need to submit a claim form. These payments represent 100% of the statutory damages to which they would be entitled if Plaintiff were entirely successful at trial, without proof of any actual injury. In addition, for Class members who believe that they suffered actual damages in the form of wage loss in an amount greater than $1,000, Defendant has agreed to pay up to $995,000 to satisfy such claims through an expedited and non-onerous process.

Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement. It was only reached after over two years of litigation and a detailed mediation under the auspices of the Hon. Joel B. Rosen (Ret.). There can be no question that negotiations were conducted in an arms-length manner.

For these reasons, and those set forth in greater detail below, the settlement is fair, reasonable and adequate to the Settlement Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements. *See, e.g., In Re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## II.  <u>NATURE AND HISTORY OF THE LITIGATION</u>

This is a consumer class action brought under the Fair Credit Reporting Act against Defendant LNSSI, a consumer reporting agency. The Complaint's primary allegations are that Defendant willfully violated the FCRA through its practice of reporting expunged criminal records on consumer reports to employers. The criminal records that Defendant reported about Plaintiff Giddiens and the Class to their employers were Pennsylvania records that had been expunged by court order, and which originated

from the Administrative Office of Pennsylvania Courts (AOPC). The AOPC provides updates to previously reported court records through what it terms the "Lifecycle" file. As a result of the filing of this case, Defendant identified the LifeCycle file and eliminated any Lifecycle expungement records from its database and reports.

Plaintiff contends that there is clear prejudice caused to consumers by the erroneous reporting of expunged criminal records, and failure to provide contemporaneous notice to consumers which would allow them to adequately verify and/or dispute the accuracy of information contained on reports. Defendant denies that it violated the FCRA.

### A.    **Procedural History**

Mr. Giddiens filed this action in the United States District Court for the Eastern District of Pennsylvania, captioned *Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624,[3] on May 14, 2012. Doc. 1. Defendant LNSSI filed its Answer on July 30, 2012. Doc. 10.

### B.    **Written Discovery and Depositions**

The parties embarked upon discovery, including the exchange of interrogatories and responses, and the production of thousands of pages of documents. Plaintiff's counsel conducted seven depositions of LNSSI representatives on a variety of pertinent topics. The Defendant took Plaintiff's deposition on January 7, 2014. The parties also engaged in significant third-party discovery, including three depositions of third parties.

---

[3]    Plaintiff subsequently learned that the employment background screening business conducted under the LexisNexis name was acquired by First Advantage Corp. and now operates under the name "First Advantage LNS Screening Solutions, Inc.," and moved to amend the caption of the case accordingly. Doc. 37.

In addition, both sides proffered expert opinions and expert witness discovery was conducted, including Defendant's taking the deposition of Plaintiff's expert.

### C.     Settlement Negotiations and Mediation

On March 26, 2013, the parties agreed to stay all deadlines in the case to pursue private mediation.  On August 7, 2013, the Parties conducted an arms-length, contentious, lengthy, and complicated in-person mediation session with the Honorable Judge Joel B. Rosen (Ret.).  The parties were unable to reach an agreement during this mediation session, and the Court issued a further scheduling order for the case on August 29, 2013 (Doc. 28).

After pursuing additional discovery, the parties conducted additional productive good-faith settlement discussions in January and February 2014, and agreed to modify the existing scheduling order to continue these discussions (Docs. 32, 33).  In May 2014, the parties were able to arrive at a proposed settlement which they believe is fair, reasonable and adequate – and which avoids the ongoing expense and uncertainties of further litigation, trial and possible appeal.  *See* Settlement Agreement attached as Appendix I to Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Doc. 38-2).  It took the parties an additional two months to negotiate the terms of the proposed notice to the class and preliminary and final proposed orders, and to reduce all of the terms of the settlement to writing.

### III.     SUMMARY OF THE SETTLEMENT

The parties have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis.  The terms of the settlement are set out in the Settlement Agreement filed on July 9, 2014. (Doc. 38-2).  The settlement is fair, reasonable and

sound in light of the relevant facts, the applicable law, and the economic, as well as non-economic, value of the settlement to the class.

### A.       The Settlement Class

The class of consumers covered by the settlement is defined as follows:

> All persons residing in the United States of America (including its territories and Puerto Rico) (a) who were the subject of a LexisNexis employment background screening report that was furnished for an employment purpose within two years preceding the filing of this Action and during its pendency (b) that contained at least one record of criminal history that had been expunged or sealed prior to the date of the employment background screening report, as a result of data from the LifeCycle File developed by the Administrative Office of Pennsylvania Courts not being taken into account in connection with the preparation of the employment background screening report so provided.

*Id*. at App. I, subsection 3.1.1.

### B.       Settlement Benefits

#### 1.       Monetary Compensation

The Settlement Agreement provides for each class member who takes no action upon receiving the notice of the Settlement to receive a cash payment in the amount of $1,000.  *Id.* at subsection 5.1.1.  No claim need be filed by any class member in order to receive this payment.

Alternatively, Settlement Class Members who do not opt out of the Settlement Class, and who believe they suffered damages greater than $1,000 may choose to file a Damages Claim by submitting a Claim Form.  Doc. 38-2 at Section 5.2.  LNSSI will make $995,000 available for payment of Damages Claims, which will be limited to lost wages.  App. I, subsections 5.2.8, 1.22.   LNSSI will review each Damages Claim and either accept it or refer it to binding arbitration.  *Id.* at subsection 5.2.7(a). Settlement Class Members making Damages Claims will receive no less than $500, even if awarded

less by the arbitrator.  *Id.* at subsection 5.2.7(c).  Additionally, Settlement Class Members were informed of the identity of the employer to whom LNSSI sent a background report, and that Class Counsel, Community Legal Services, Inc., may represent them in the claims process.  *Id.*  at subsection 5.2.1.

To the extent that any funds remain after funding the automatic payments and payments for Damages Claims to Settlement Class Members, such funds will be distributed to two *cy pres* recipients designated by the parties and approved by the Court. *Id.* at subsection 5.7.

### 2.     Costs of Notice

Defendant will pay all costs of notice relating to the settlement and all necessary and reasonable costs of administering the disbursement of consideration, and other administrative expenses including, but not limited to, postage charges, printing costs, a telephone assistance program, and all other notice costs and other charges as may be approved by the parties subject to further approval by the Court.  Doc. 38-2 at subsection 3.3.6.

### 3.     Service Award for Class Representative

Subject to court approval, the parties have agreed that the Representative Plaintiff will be paid the sum of $10,000 by the Defendant, and to which the Defendant will not object, for his individual settlement award and his services in connection with representing the Class.  Doc. 38-2 at Art. 5.3.1.

### 4.     Attorney's Fees and Costs

Subject to court approval, LNSSI has agreed to pay, and agrees not to object or engender objection to, $520,000 for the combined attorney's fees and costs incurred by

Class Counsel in the prosecution of the litigation.  Doc. 38-2 at subsection 5.32.  The amount of attorney's fees and expenses to be paid to Class Counsel was not agreed to by the parties until agreement was reached in principle on the other terms of this Settlement Agreement.   Plaintiff has contemporaneously filed his Motion for Attorneys' Fees and Reimbursement of Expenses detailing the fees and costs in this matter.

## 5.    Class Notice

The settlement provides for a mutually agreed-upon Settlement Administrator, McGladrey, LLP ("McGladrey"), to perform settlement administration responsibilities. Doc. 38-2 at subsection 3.3.1; Preliminary Approval Order, Doc. 40.

Pursuant to that agreement, McGladrey mailed notice to each of the 288 members of the Class.   Undeliverables totaled 26.   *See* Declaration of Risa Neiman of McGladrey, LLP ("Neiman Decl."), Doc. 42 at p. 2.

McGladrey established and maintained a website dedicated to the Settlement (http://www.claimsinformation.com) to assist Settlement Class Members.  *Id.*  The website listed the exclusion and objection deadlines, as well as the date, time and location of the Court's Final Fairness Hearing. *Id.*  Copies of the Long-Form Notice, the Settlement Agreement, and the Preliminary Approval Order were posted on the website so that they could be downloaded by Settlement Class members.  The Settlement Website also included contact information for Settlement Class Counsel and the Settlement Administrator.  The Settlement Website went live on July 28, 2014, and is accessible 24 hours a day, 7 days a week.  *Id.*  As of the date of filing, the Settlement Website had received 224 visits by 89 unique visitors.

McGladrey has also reported that, as of November 18, 2014, McGladrey has not received any requests from class members seeking exclusion from the settlement. Neiman Decl., Doc. 42 at p.2

## IV.   ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

When the Court preliminarily approved this settlement, it considered whether the settlement class could be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). As final approval of the settlement also involves the determination that certification of the Settlement Class is appropriate, the analysis applies again at this juncture.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In support of his contention that proper and sufficient grounds for class certification exist under Rule 23, Plaintiff would show the following:

### A.   Numerosity

Plaintiff asserts that the members of the Settlement Class are so numerous that joinder of all members is impracticable. According to records maintained by Defendant, it appears that the Settlement Class consists of 288 Pennsylvania consumers. *See* Doc.

38-2 at subsection 3.4.2. These numbers are such that joinder of all members is not practicable.

**B.      Commonality**

Plaintiff also asserts that there are questions of law or fact common to the Class. The principal question is whether Defendant willfully and negligently violated the FCRA by employing a policy and practice of disclosing expunged Pennsylvania criminal record histories and failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom its report related. The Representative Plaintiff contends that such information should be excluded from consumer reports; LNSSI denies that its practice violated the law.

Cases presenting standardized consumer reporting practices invariably present common predominating issues. As Judge Brody held in a similar case, "the factual and legal basis of the claim is common to all Plaintiffs; Plaintiffs allege that the standard reinvestigation letter that Equifax sent to prospective class members in response to a dispute over public record information contains misstatements and misrepresentations in violation of the FCRA. Thus, Rule 23(a)(2) is satisfied." *Chakejian v. Equifax Information Services, LLC,* 275 F.R.D. 201, 209 (E.D. Pa. 2011).

Where, as here, a defendant engaged in standardized conduct toward putative class members, commonality is satisfied. *In re Prudential*, 148 F.3d at 310.

**C.      Typicality**

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential*, 148 F.3d at 311. The threshold for establishing

typicality is low.  Typicality does not require that the claims of the class members be identical.  *Eisenberg v. Gagnon*, 766 F.2d at 786.  Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members.  *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982); *see also* H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 3.13.

In this case, each Settlement Class Member was the subject of a background consumer report that contained expunged or sealed criminal records.  The claims of Mr. Giddiens and each of the Settlement Class Members arise from the same course of conduct, and are based on the same theory of liability.  *See Chakejian*, 256 F.R.D. 492, 498.  In other words, the Representative Plaintiff's claims are typical and aligned with the interests of the rest of the Settlement Class.

### D.     Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class.  *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Mr. Giddiens, the Representative Plaintiff, fairly and adequately represents the interests of the Settlement Class.  Plaintiff's attorneys have substantial experience in class

action and consumer litigation and are qualified to conduct the litigation.[4]  Further, the

Representative Plaintiff has no interests antagonistic to the Settlement Classes and is a

suitable and adequate class representative.

**E.      Rule 23(b)(3) Considerations**

The proposed settlement contemplates a class certification permitting opt-outs

pursuant to Rule 23(b)(3).  An action may be maintained as a class action if the four

elements described above are satisfied, and in addition, certain other conditions under

Rule 23(b)(3) are met:

> (3)      the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The requirement that the questions of law or fact common to all members of the

Class predominate over questions pertaining to individual members is normally satisfied

---

[4]      *See, e.g., King v. General Information Services, Inc*., C.A. No. 10-6850 (E.D. Pa. Nov. 4, 2014) (Doc. 125); *Robinson v. General Information Services, Inc.,* C.A. No. 11-7782 (E.D. Pa. Nov. 4, 2014) (Doc. 55); *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, 2014 WL 4403524, *11 (E.D. Va. Sept. 5, 2014) (overruling objection to adequacy of class counsel); *White v. Experian Information Solutions,* 2014 WL 304270, *16 (C.D. Cal. Jan. 21, 2014) (appointing Francis & Mailman as interim class counsel in contested proceeding); *Sapp v. Experian Information Solutions*, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.,* 285 F.R.D. 139 (D. Me. 2012) (certifying firm of Francis & Mailman as class counsel in consumer class action); *accord, Serrano v. Sterling Testing Systems, Inc.,* 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010); *Summerfield v. Equifax Information Services, LCC,* 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Jones v. Midland Funding, LLC,* C.A. No. 3:08cv802 (RNC) (D. Conn. October 13, 2009); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *3 (E.D. Pa. 2003).

where plaintiffs have alleged a common course of conduct on the part of the defendant. *In re Prudential*, 148 F.3d at 314-315.

Plaintiff has alleged such a common course of conduct by Defendant. Class members were all subjected to the same alleged violative practice. The predominating and dispositive issue is whether Defendant violated the FCRA by engaging in this practice.

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals. In numerous cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here. *See*, *e.g., Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Moreover, such a certification permits individual claimants to opt out and pursue their own actions separately if they believe they can recover more in an individual suit.

Thus, both predominance and superiority are satisfied.

Solely for the purposes of settlement, Defendant does not dispute that the Class should be certified in accordance with Rule 23(b)(3). Accordingly, the Court should certify the Class for settlement purposes.

12

## V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

When a proposed class-wide settlement is reached, it must be submitted to the court for approval.  NEWBERG at § 11.24.  Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval hearing.  *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004),  *available  at*  http://www.fjc.gov/public/pdf.nsf/lookup/mcl4.pdf/$file/mcl4.pdf.  The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh*, 521 F.2d at 157; *In re Prudential*, 148 F.3d at 317; *In re Rite Aid Corporation Securities Litig.*, 269 F.Supp.2d 603, 607 (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005) (on remand).

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement.  *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Girsh v. Jepson, supra*.

Thus, this Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of

the relevant risks of the litigation.  *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).  In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues intentionally left unresolved.  *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *see also Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975).  A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution.  Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement.  *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an educated and eminently reasonable resolution of the dispute.  An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved.

### A.  The Complexity, Expense And Likely Duration Of The Litigation

Absent the settlement, the Court would be required to rule on the many issues likely to be raised in the parties briefing on class certification and summary judgment. While the Representative Plaintiff believes he would prevail on all issues, there is at least some risk he would not.

Even if Plaintiff was able to prevail on class certification and successfully defeat the expected motion for summary judgment, a lengthy and expensive trial would most likely ensue.  Trial preparation on both sides would be necessary and a jury trial would eventually be before the Court.  Such a trial would likely present challenges for Plaintiff. To recover on the claim for statutory damages, Plaintiff would have to prove willfulness at trial, a high hurdle to clear. *See Reibstein v. Rite Aid Corp.,* 761 F.Supp.2d 241, 251–52 (E.D. Pa. 2011), citing *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56–57 (2007); *see also Sapp v. Experian Information Solutions, Inc.,* 2013 WL 2130956, at * 2 (E.D. Pa. May 15, 2013) (noting potential of successful willfulness defense).  It would be unrealistic not to expect appeals from any result reached.  Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties.  *See In re General Motors Pick-Up Trust Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

### B.  The Reaction Of The Class To The Settlement

As set forth above, notice has been directly mailed to members of the Settlement Class advising them of the terms of the settlement and their right to exclude themselves

from the Class.  The deadline for Class members to exclude themselves and to object was October 20, 2014.  Doc. 38-2 at subsections 3.4.1, 3.4.3(a); Doc. 41.  As of November 18, 2014, not a single Settlement Class member has elected to be excluded from the Class.  Neiman Decl., Doc. 42 at p. 2.   No objections have been filed with the court. This is convincing evidence of the proposed settlement's fairness and adequacy.  *See In re Rite Aid Securities Litig*., 396 F.3d 294, 305 (3d Cir. 2005) (agreeing with district court that two objections out of 300,000 class members was a "rare phenomenon"); *In re Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

### C.    The Stage Of The Proceedings And The Amount Of Discovery Completed

The parties in this case engaged in extensive discovery, exchanging thousands of pages of documents and participating in seven depositions, including three depositions of third parties, as well as the Plaintiff's deposition.   In addition, an all-day mediation session that ultimately proved unsuccessful at least had the benefit of acquainting the parties' with each other's positions.

Thus, when the parties agreed to resume settlement discussions, they had sufficient information to informatively participate in that proceeding.   The settlement negotiations were adversarial and somewhat protracted, but eventually the parties were able to reach an agreement in principle to settle.   After hashing out the details of the Settlement Agreement and the collateral settlement documents, the parties formally sought preliminary approval of a settlement approximately two years after the case was filed.

Thus, the final settlement occurred only after the parties were able to assess its fairness adequately.  As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases."  *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, at *6 (E.D. Pa. 2003), quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### D.      The Risks Of Establishing Liability

The risk of establishing liability is another important factor warranting final approval of the settlement.  To prevail at trial, Plaintiff would need to succeed on his claims that the Defendant's actions violated the FCRA.  Defendant denies that it has committed any wrongful acts or violations of law or that it has any liability to the Plaintiff or the Settlement Class.

While Plaintiff strongly believes that the Defendant's activity violated the law as set forth in his Complaint, he also recognizes the risk that the Court or a jury might not make that finding.  Although Plaintiff was prepared to take on these burdens, the risks he faced were not insignificant.

### E.      The Risks Of Establishing Damages

Even if Plaintiff were to overcome the liability obstacles, there are also risks in obtaining statutory damages, which Plaintiff has avoided by virtue of the proposed settlement.  The determination of statutory damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions.  In this case, Plaintiff and the members of the Settlement Class were seeking statutory damages

under the FCRA in the range of $100 to $1,000 per class member, as well as punitive damages.  15 U.S.C. § 1681n.

The value of the settlement to Settlement Class Members is over $1,575,000.00 in total class recovery.  Each Settlement Class Member that does not opt out is guaranteed $1,000, the statutory damages maximum under the FCRA, without the need to submit a claim form and without any proof of actual injury.  Class members who believe that they suffered wage loss in an amount greater than $1,000 may seek payments for these damages through a streamlined process from a dedicated $995,000 fund.

Furthermore, the settlement as a whole will result in substantial practice changes that will benefit all Settlement Class members, as well as others in the future.  Also, even if LNSSI were to be found liable for willful conduct, and Plaintiff was awarded statutory damages, that award amount is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute, nature of the noncompliance, and extent to which noncompliance was willful or negligent.  15 U.S.C. § 1681n(a) and § 1681o(a).

Thus, this settlement avoids the litigation risk to the Settlement Class and secures tangible and useful relief that may not be obtainable after trial. The risk of no or a lower damages award at trial, as well as limitations on the Court's ability to award injunctive relief under the FCRA, supports final approval of the Settlement Agreement.

### F.      The Risks Of Maintaining The Class Action Through Trial

The settlement here comes before Plaintiff has moved for class certification. Defendant would be expected to vigorously oppose certification, and even if class

certification were granted, it would not be surprising if Defendant pursued an interlocutory appeal under Rule 23(f).

Alternatively, even if the case were certified, it is likely that Defendant would seek decertification, either before trial, during trial or on appeal. *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002). While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

G. **The Ability Of The Defendant To Withstand A Greater Judgment**

The ability of a defendant to withstand a greater judgment is a particularly relevant consideration "where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein,* 761 F. Supp. 2d at 254. Here, this factor is neutral.

H. **The Reasonableness Of The Settlement In Light Of The Best Possible Recovery**

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial. Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery. Thus, a settlement is advantageous to all concerned. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case

dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiff is confident of his ability to prevail at trial, no final adjudication has been made as to the validity of his claims.  Plaintiff also recognizes that Defendant has continued to deny all liability and allegations of wrongdoing and that Plaintiff's claims would be threatened with dismissal in connection with dispositive motions which would be expected to be filed and briefed.  In *In re Greenwich Pharmaceutical Securities Litig.*, 1995 WL 251293 (E.D. Pa. April 26, 1995), the court held in finding a $4.3 million settlement within the range of reasonableness where plaintiff's estimate of damages was $100 million:

> [P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and vigorous claim of no damages.  When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness."

*Id.* at *5.  *See also, In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approval of settlement that provided 5.2% of best possible recovery).

Through the proposed settlement, Plaintiff has obtained a very reasonable benefit for the Settlement Class under the FCRA.  Moreover, through the practice changes that the lawsuit triggered, Plaintiff has achieved what essentially acts as a settlement injunction prohibiting the Defendant from disclosing the same expunged records in the future.  This settlement allows Plaintiff to avoid the risks described above and ensures an immediate benefit to the Settlement Class. The monetary compensation available under

the Settlement Agreement is entirely in line with comparable settlements under the FCRA.  For example, Chief Judge Tucker recently granted final approval to a class action settlement awarding approximately $1,700 to each member of a class of consumers who were the subjects of employment background reports containing expunged criminal record information.  *See Robinson v. General Info. Servs., Inc.,* No. 2:11-cv-07782-PBT (E.D. Pa.), at Doc. 44-2 (Settlement Agreement), Doc. 49 (Motion for Final Approval) and Doc. 55 (Final Approval Order).  Given the dedicated $995,000 fund available to Settlement Class Members in this case, which allows for additional recovery beyond the guaranteed $1,000 payments, the settlement at issue provides monetary relief commensurate with, if not greater than, that available in *Robinson*.

Plaintiff believes the proposed settlement is well within the range of reasonableness and should be approved.

## I.      The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation

Essentially, this factor is an amalgam of the analysis described above.  When the risks of liability and damages are considered in light of the total potential recovery, this settlement is an excellent result for the Settlement Class.

## VI.     INDIVIDUAL SETTLEMENT AND SERVICE AWARD

Class Counsel also seeks this Court's approval of a ten thousand dollar ($10,000.00) individual settlement and service award for John Giddiens, for his willingness to undertake the risks of this litigation and shoulder the burden of such litigation.  In this case, there would be no benefit to Class members if the Representative Plaintiff had not stepped forward.  Mr. Giddiens devoted significant time and energy to the litigation, including reviewing documents, sitting for a deposition and consulting with

counsel as necessary.  He has totally fulfilled his obligations as a class representative. Class Counsel therefore request that the Mr. Giddiens be approved for the award described above and as set forth in the Settlement Agreement.  The award represents actual and statutory damages under the FCRA, as well as recognition of the benefits and value of the settlement that the Representative Plaintiff achieved for the Settlement Class. Class members were notified that Class Counsel would request an award for the Representative Plaintiff in this amount and no Class member objected.

This award is well within the range of awards made in similar cases.  *See Berry*, 2014 WL 4403524, at *16 (awarding $5,000 to each of several class representatives); *Sapp,* 2013 WL 2130956, at * 3 (awarding $15,000 to class representative in FCRA settlement); *McGee,* 2009 WL 539893, at *18 ($3,500); *Barel v. Bank of America,* 255 F.R.D. at 402-403 ($10,000); *Perry v. Fleet Boston Financial Corp*.,  229 F.R.D. 105, 118 (E.D. Pa. 2005) (awarding $5,000, and citing cases); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (awarding $25,000 to $85,000 incentive awards); *Robinson v. General Info. Servs., Inc.*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) at Doc. 55 (final approval order awarding $10,000 individual settlement to class representative).  Accordingly, the award requested for the Class Representative should be approved.

**VII.**   **CONCLUSION**

As concluded by Judge Brody in approving a settlement of FCRA claims in the *Chakejian* case, "this settlement is fair, adequate, and reasonable. Such a finding is further bolstered by previous court decisions approving similar settlements whose terms were somewhat less favorable than these." *Chakejian*, 275 F.R.D. at 216 (citations

omitted).   *See also Sapp*, 2013 WL 2130956, at *2 ("There is no question but that the settlement was a result of hard-fought, arm's-length negotiation….   In sum, the settlement is unquestionably fair, adequate and reasonable").

The Representative Plaintiff requests final approval of the proposed settlement herein for the same reasons.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:  November 21, 2014          BY:     */s/  James A. Francis*
                                        JAMES A. FRANCIS
                                        JOHN SOUMILAS
                                        DAVID A. SEARLES
                                        LAUREN KW BRENNAN
                                        Land Title Building, 19th Floor
                                        100 South Broad Street
                                        Philadelphia, PA 19110
                                        (215) 735-8600

                                        Sharon M. Dietrich
                                        Brendan Patrick Lynch
                                        COMMUNITY LEGAL SERVICES, INC.
                                        1424 Chestnut St.
                                        Philadelphia, PA 19102

                                        *Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I caused a true and correct copy of the foregoing

to be served via the Court's ECF Notification system upon all counsel of record.


Dated:  November 21, 2014                    */s/ James A. Francis*
                                             JAMES A. FRANCIS